How do you pronounce that? Is it Dealey? Dealey. Okay, Mr. Dealey. May it please the Court, my name is Tyler Dealey. I represent the defendant in this action, Shannon Clear, Tony Ward, Cadence, and Brandon Taylor. They were offensively charged in an accident with an uninsured driver. And this is a declaratory judgment action filed by Founders Insurance seeking to avoid providing coverage under a policy of insurance purchased by Shannon Clear. After discovery, the parties both filed cross motions for summary judgment. Ultimately, Founders' motion was granted and my client was denied. And we filed this. The facts are not in dispute. Founders sent a bill to my client on... Do you want me to address the motion in this case? Yes, please. Yes, I think before we talk about the facts, the jurisdiction should be discussed. Sure. Okay. Absolutely. Tell me why we have jurisdiction to hear this case. Our notice of appeal contained a certificate of mailing that was signed by a staff member in our office. Without an affidavit. Without an affidavit, correct. Did you have a specific certificate by a non-attorney as to the date of mailing? We did have a specific... It was attached to the motion that you're asking. It was a certificate signed by a non-attorney. That as to the date it was actually mailed? Oh, the date it was mailed. It did have the date on it. Correct. Okay, let me rephrase the question. Did the certificate by the non-attorney include in the body that it was mailed on X date? Yes. Okay. All right. It wasn't verified by affidavit, right? That is correct. Okay. And do you think that's an inconsequential error under 1233? I do judge. In the cases cited in the motion to dismiss, basically they involved cases where there was no certificate whatsoever filed. They just sent the notice of appeal, did not attach a certificate signed by anyone. This is just the wrong person signed the certificate. What about the Supreme Court case of Hugo v. American Accounting Association? Correct, Judge. That is one of the cases that there was no certificate attached at all in that case. That attorney just sent the notice of appeal with nothing. His argument was essentially that the envelope itself should serve as a certificate of mailing, which is a different situation than what we're dealing with. We actually did have a certificate. It was just the wrong person signed it. You don't think that Justice Tice, in this opinion, requires absolute compliance with 1283? I don't believe she would have taken it to the extent, I think. Oh, I'm sorry. Notice of appeal. So the only thing you were missing was the fact that it was not by affidavit. It was by apparel. Correct. If I would have signed it, we would have been fine. Or if it would have been notarized and said affidavit on the top, we would have been correct as well. I don't believe there's any assertion that there's prejudice from the theater. I do believe I cited a case that found that that same circuit thinks to be a harmless area. What's the name of that case? That is Curtis v. Beacon Insurance. That has the same circumstances as yours. It is a notice or the certificate of service that was signed by an attorney. It was not an affidavit. It was not a notice of appeal, however. But it was a certificate of mailing signed by a non-attorney. Okay. Thank you. Any more questions on that motion? No. Okay. As I said, the facts are not in dispute. Founder sent a bill to Mr. Clear that was due on March 11th of 2012. That's located on page 20 in the record. The bill included language that if the policy was not paid by that due date, that it would be canceled one minute after the date that it was due, 12-01. I'm assuming that's because the rest of the world, like me, doesn't know if 12 midnight is 8 p.m. But I don't know if founders may argue that they're being generous by giving that extra minute. The bill also included bolded language that asked Mr. Clear to add a $7 late fee if the payment was not made by the due date. That's right next to the amount that's due in bold. When the bill was sent, Mr. Clear's policy was in full effect, and he was current on his payments. There's no dispute that Mr. Clear did not make the payment on the 11th. And then, very unfortunately, he was in a car accident, a very serious car accident on March 13th, two days later. He then made a full payment plus the $7 late fee the next day, the 14th. Did the insurance company have the discretion not to accept it? Given the wording of the notice sent to your client before the expiration date? I don't believe they did, because they are basically saying that they will accept late payments with that language, and they certainly did accept it. And reinstated the policy, I understand. They did, as of the 15th. The statute at issue is 215 ILCS 5143.15. The relevant language is, where the cancellation is for nonpayment of premiums, the notice of cancellation must be mailed at least 10 days before the effective date of cancellation. That statute's there to protect people from the various situations that we're talking about today, where someone's late on payment, doesn't realize it, and then the insurance company wants to cancel that policy. In real life, when someone doesn't pay their water, their power bill, that service doesn't shut off one minute the day after that's due. You usually get a letter, a big red lettering to pay, and you get caught up. Then when that service actually does get terminated, you know it. Your power goes out, you don't have any lights, you go take a shower, and there's no water. Insurance, on the other hand, is invisible. There's no check insurance light when you get into your car to know that you're up to date. And that's why the statute's there, because there are serious life-altering consequences to suffering a lawless when there's no insurance coverage. The notice in this case was improper for two reasons. First, it was ambiguous. And second, it was sent prior to ending this payment by Mr. Clair. Why was it ambiguous? Yeah, exactly. It sends two different messages. On one hand, you've got the language that says that the policy will be canceled as of the date that the payment's missed on. But then down lower on the document in the bold letter, it says, if you don't make the payment by that date, add a $7 late fee. It's important to note that the founders drafted this notice. They could have said that it was a reinstatement fee, but they didn't. Which, to a reasonable person reading that, was going to assume that they were willing to accept late payments. Since that notice was ambiguous, the court should find that it was insufficient to cancel Mr. Clair's policy. It was also sent prior to ending this payment. As I stated, Mr. Clair was current on his payments when this bill, masquerading as a cancellation notice, was sent. The purpose of the provision, of the statutory provision, is to warn and ensure that the policy is in danger of being canceled. And that an overdue premium should be paid to avoid that policy being canceled. That comes from the Stewart versus Republican public insurance case. There was no overdue premium when that notice was sent. There was literally nothing to warn about, you know, because no payment had been missed. The statute would essentially be meaningless if it's interpreted to allow notice prior to a missed payment. How can there be notice for nonpayment when there has been no nonpayment? The only interpretation that serves the purpose of the statute is that you're required to send notice after a payment has been missed. Counsel for Founders cited heavily in their brief two cases, Hernandez and Fuller, stating that, you know, that kind of notice is proper. Those cases are distinguishable because in Hernandez, the notice of cancellation is sent six days after this payment. State Farm, the other party in the Hernandez case, sent a bill saying, well, there was some confusion on payments in that. Hernandez paid a payment, but it wasn't quite enough. They sent another letter saying on April 15th, you've got to pay this amount to get you up to where you need to be. The payment was not made. Six days later, they sent a cancellation notice. Then nearly a month after the 15th, he was in an accident. So it's a totally different set of circumstances. Also, in that case, I believe it was after the accident, so it's more than a month after the missed payment. Mr. Hernandez did try to make a payment to State Farm, and that was rejected. As I mentioned before, Founders accepted the payment in this case, and that was only two days after the accident. Or only one day after the accident, three days after the missed payment. A primary consideration of the court in Hernandez was the idea that State Farm should not have to provide free coverage to their insurer. That's not the case here, because Founders was paid in full. Anybody's getting anything for free here, it's Founders, because they accepted a payment. Yet they're trying to say there's two days here they weren't covered. The Fuller case, similarly, those notices were sent after missed payments. Not the case here. The Fuller opinion does reference, and the Fuller is a Fifth District case, it does reference Hernandez, but only for the principle I just discussed, that they shouldn't have to provide free coverage. There's no free coverage here. Maybe I missed something. I thought he did miss a day of payment, because he moved. He didn't miss any days? Mr. Klicker? Yeah. He had missed previous payments and then reinstated before that. No, but with this accident, he didn't miss any, he didn't miss the payment day? No, he missed the payment day, but then he paid it in full with the late fees. That's what I was arguing. That's what I thought. Yeah. So, he did miss the payment. He missed the March 11th payment, he paid it on the 14th. You're distinguishing cases where they missed the payment. No, the notice in those cases was sent after the missed payment. Here, the notice was sent nearly a month before the missed payment. Okay. I apologize if I wasn't clear there. One case that does fit is the Mitchell case, and that's a Fifth District case. In that case, the insurance company sent a letter saying, and there had been no payments or premiums in that case at all. It was a new policy. Some confusion about getting the premiums paid through the loan, the bank providing the loan. So, no premium had ever been paid. The insurance company sent the insurer a letter saying, please pledge this amount or your policy is going to be canceled as of this date. The court found that to be improper to terminate the policy because it was equivocal. On one hand, they were saying that we're going to cancel the policy. On the other hand, they're saying send us a payment and that won't happen, which is very similar to the notice that was sent in this case. What was the amount of this policy? At 2040. Sorry? It was at 2040. Oh, you're talking limits or the actual total premium, right? Limits. Yeah. Mr. Foley's policy, right? Correct. It was his policy. He was not able to drive, but he did purchase the policy. I can't hear you. Oh, it was his policy. He was not able to drive. He was a passenger vehicle, but he did purchase the policy. Insurance companies are held to a strict standard. We tried to cancel insurance policies. Your founders did not meet that standard. They sent an ambiguous notice prior to any missed payments. In order to protect consumers from the devastating consequences of having a catastrophic event with no insurance coverage, this court should hold that that notice was insufficient. It reversed the summary judgment, entered it in favor of the founders, and entered the summary judgment in favor of the defendant. Are there any questions? Thank you very much. Ms. Lee? What do you want to tell us about jurisdiction? May it please the Court, my name is Allison Lee, and I am here today on behalf of Founders Insurance Company. Of course, the first issue that we do need to address is jurisdiction. Rule 303 of the Illinois Supreme Court rules provides that a notice of appeal must be filed within 30 days after entry of final judgment. The Illinois Supreme Court, in the Secura v. Illinois Farmers case, interpreted this requirement and noted that even if a notice of appeal is not filed within that 30 days as evidenced by the file stamp, it may still be deemed timely so long as it meets the Rule 12b3 requirements for proof of mailing service. That rule imposes four different requirements on an effective proof of mailing. First is that it must be a certification by an attorney or an affidavit of non-attorney. As opposing counsels already admitted, that requirement was not met here. But there are also three additional requirements. First, there must be a statement as to the place and time of mailing. Now, in the notice of appeal, there is a proof of service that does contain a statement of the place and time of mailing. However, this is a copy of the notice of appeal only to opposing counsel, my office. And this is where the third requirement comes into play. Rule 12b3 specifically requires that there must be evidence of the actual address that was on the envelope to which the notice of appeal was mailed, and that would be that address of the circuit clerk. Here, there's only the address of my firm, so there's no evidence by this proof of service that the notice of appeal was ever actually mailed to the circuit clerk. And finally, the last requirement is simply that postage must be prepaid. And again, we don't contest that the proof of service there is problematic. Additionally, if you look to the notice of filing notice of appeal, that also cannot satisfy the requirements because, again, there is not the certification or affidavit requirement met. And also, while it states that the filing notice of appeal was mailed to opposing counsel, it never contains any representation that the notice of appeal itself was mailed to the circuit clerk for the Franklin County Circuit Court. Accordingly, under Rule 12b3, it's not an effective proof of service by mailing, and therefore, the filing date is the actual file stamp date of June 20th. Now, the underlying judgment here was entered on May 16th, 2014. Therefore, there were 30 days after that date in which there was to file a notice of appeal. Thirty days actually fell on June 15th, 2014, which was a Sunday. So they had until the following Monday, June 16th, 2014, to file that notice of appeal. Because it is file stamped on June 20th, 2014, and they do not meet the requirements of Rule 12b3, this court simply doesn't have jurisdiction. As the Illinois Supreme Court emphasized in the Secura v. Illinois Farmers Insurance decision, compliance with Rule 303 is jurisdictional. And where a party does not comply with filing a notice of appeal timely, dismissal of the appeal is warranted. But also, the judgment below in favor of Founders Insurance should also be upheld for three reasons. First, the judgment should be sustained because Founders Insurance complied with all requirements of the policy and the Illinois Insurance Code in canceling this policy. Second, the concerns of Judge Cook, as expressed in the DACA decision, do not warrant changing of Illinois law. And finally, there is simply no ambiguity in the cancellation alert or installment notice that warrants overturning the decision below. First, and most importantly, Founders Insurance complied with all the requirements that it had to comply with in order to cancel this policy under Illinois law. Those requirements, according to Textile Manufacturers v. Industrial Commission, are embodied in both the insurance policy itself as well as the Illinois Insurance Code. In Hernandez v. State Farm, the Illinois Appellate Court stated that under the Illinois Insurance Code, there are simply two requirements for a valid cancellation notice. The first requirement is that it must be sent 10 days before the cancellation date. And the second requirement is that there must be a specific reason for the cancellation in the notice. The Hernandez decision specifically considered a notice of cancellation for non-payment of premium. And the Court stressed that in interpreting the statute to find out what is truly required, the Court should only look to the plain language of the statute itself and not read into that language any additional requirements that are not suggested in the very language. Because the language does not state that the cancellation order has to be mailed only after the event of a non-payment of premium, the Hernandez Court refused to read that condition into the statute. In explaining why the legislature would have reached that conclusion, the Hernandez Court specifically found that if the insurer had to wait for an event of non-payment, it then would have only been able to cancel the policy 10 days after that non-payment. So in effect, in certain instances, the insurance company would be providing 10 days of free coverage. Why aren't you precluded from canceling after you've accepted the payment? We accepted the payment prospectively. And in paragraph 17 of the insurance policy itself, it specifically provides how cancellation and reinstatement will be handled. The policy says, if this policy has been canceled and reinstatement is requested, the company may, at its sole option, reinstate the policy and determine the effective date of the reinstatement. So because the policy grants us those rights, Founders Insurance Company was able to accept the payment, but then state when the policy's coverage would be reinstated. And that goes to the real heart of what automobile accident insurance coverage is for. Insurance understand that there's the risk that they might be involved in an automobile accident. They don't want to set aside a large sum of money to protect themselves against that risk, so they purchase an insurance policy for a smaller premium amount. The benefit that they get there is that if there is a catastrophic injury, the insurance policy will cover them by two limits of the policy. But they don't have to set aside that $20,000 or $40,000 themselves. In doing so, the insurance company is gambling that this risk isn't actually going to materialize. So if by accepting the premium payment, when the insured already knew there was an accident, it would defeat the very benefit of the bargain of insurance, because the insured would have known that the unknown probability of risk had actually occurred. Therefore, it's just to allow the insurance company to reinstate the policy after the payment is made and not to cover those few days where a payment was not made. So if you could refresh me, did the insurer send a letter that stated that it was prospective or they were accepting it prospectively? Yes, Your Honor. They received the payment on March 15, 2012, and they sent a notice canceling the policy on March 12, 2012, and then sent another notice on March 15, 2012, saying that it was effective on March 15, 2012, but that there was no coverage from March 12, 2012 through March 14, 2012. So the insurer was indeed advised that there was no coverage during that period. Does Illinois law require an insurance company to cover the insured for 30 days, even though there's no payment? I honestly don't know if that is a requirement. We can certainly submit supplemental briefing. I know that the policy had been purchased longer than 30 days ago at this time. There had been a cancellation and a reinstatement, but I do not know how that requirement would apply to a reinstatement. Well, I'm just looking at your policy about the 30 days. In other words, if you have an accident, did you have the right to cancel it? If you had known of the accident, did you have the right to cancel it? After that 30-day requirement, I believe that we would have been able to cancel the policy if there was a valid reason for cancellation. I don't know, under the terms of the policy, if knowledge of the accident itself would be grounds for cancellation. You started out by saying, absent that 30-day requirement. So, you've got a hedge in there. Again, Your Honor, I apologize. I am not familiar with that 30-day requirement. My firm would be more than happy to submit supplemental authority on that via letter, but I'm not prepared to speak to that point today. Well, assuming there's jurisdiction, are you claiming that there is coverage or no coverage? I'm claiming that there is no coverage. So, if there's a 30-day requirement that says you can't cancel, then we'd be done, right? Yes, Your Honor, unless there was an exception to that. And, frankly, I'm not prepared to make that recommendation. Thank you, counsel. Just give us a moment. We'll give you some extra time. I want to go back to the jurisdiction thing one time. Are you aware of any case that you've cited that says every detail of 12b-3 must be required without any consideration of prejudice, in other words, prejudice doesn't enter into this? I don't believe that either of the secure or Hoover decisions states that explicitly. I think if you read their absolute that this is jurisdictional, the fact that there was not strict compliance means that proof of mailing was not satisfied by Rule 12 and, therefore, dismissal was warranted. Obviously, any time an appeal is dismissed, there would be prejudice suffered. So those courts were aware that the appellant in both instances was prejudiced in the sense that they did not get to pursue the relief that they otherwise would have been entitled to had they filed a timely notice of appeal. And that prejudice did not persuade the Illinois Supreme Court in either instance to deviate from the requirements of Rule 12. Additionally, even though it may command a harsh result, it's a rule that's been in effect since 1967. 12b-3. Correct, Your Honor. So these are requirements. I believe, actually, that 1967 may go to Rule 367-373's incorporation of Rule 12b requirements for appellate filings. And so this has been on the books for a while. It certainly should not have been a surprise to opposing counsel. And, therefore, even though it may seem like a harsh result to us, it is important here because it's jurisdictional. Opposing counsel also addressed the Curtis v. Pekin case. And one critically distinct point in that case is the Curtis v. Pekin case only dealt with the ruling on a motion to dismiss. There's no evidence that the motion to dismiss had been filed by a certain time. And so the court wasn't looking to see whether Rule 12b-3 was complied with to see if it had the authority to hear the motion to dismiss. Instead, it was simply seeing, was there actually service or not? Was the plaintiff prejudiced by not getting a copy of the motion? And the court concluded that the plaintiff was able to argue the motion fully, and so, therefore, there was no prejudice. And that's why the prejudice analysis was relevant in the Curtis opinion. However, the Curtis opinion was decided by the 4th District in the 1980s. The secure decision came down from the Illinois Supreme Court in 2009, and the Illinois Supreme Court reaffirmed its position just last month in the Huber decision. Additionally, the Huber decision came out of the 4th District, and the 4th District at that time did not rely on Curtis v. Pekin insurance. Instead, the 4th District at that time relied on strict compliance with Rule 12b-3.  Correct, Your Honor. Opposing counsel also emphasized that there was perhaps a possibility of free coverage here, and so, therefore, the Hernandez decision should be distinguished. Now, the real crux of the Hernandez decision is simply that the Illinois legislature did not impose any requirement that the notice of cancellation be sent after the event of nonpayment, and so, therefore, the court itself would impose that requirement. The analysis that it gave regarding the potential for having to provide 10 days of free coverage was simply an explanation of why the legislature may have made that choice. But the real crux of that decision is not to impose a requirement where the plain language of the statute does not suggest such a requirement. And when reading the language of 215 ILCS 143.14-15, there is no language that suggests that a notice of cancellation work has to be sent only after an event of nonpayment of premium. Indeed, opposing counsel's own authority at the Yackov v. Curtis case, the majority concluded that in many instances you would actually want the notice to be sent as early as possible and before the event of nonpayment so that the insured would have ample time to make any arrangements that he or she would need to make in order to be able to make payment, whether it be to transfer funds from one account to another, to perhaps borrow money from a friend or a family member. And so therefore, the family's insurance policy is actually a benefit to the insured because it awards them 20 days before the cancellation date. That's close enough in time that it's not something in the back of your memory that happened six months ago that you're not going to remember. But it's also 10 extra days than the statute provides that allows the insured to get the financial resources together to meet that obligation. Ms. Lee, since you're so up on the section code numbers, do you know what 143.19 is off the top of your head? That's where it talks about the 30-day notice. I do not have notice. But it does seem to carve out an exception for lack of nonpayment of premiums, which then says it's 10 days. I said 7 days, 7 and 215. 143.19. Is it 215? It's 215. 143.19 would be the section. Gave me a good reason to stand up. Okay. So would you give it to me again? It's what? 215. 215. And then it's 143.19. 215.5. The citation I have is just 215 ILCS 143.14. Let me double check. Well, no, you're probably right. Here we go. One, one. Five slash 143. I apologize. So it is five slash. 143.1. 14 and 15 are the provisions I cited, and I believe they're looking at 0.19 for a 30-day report. 143. Right. Got it. 143.9. Okay. It's no longer in here. It goes from 143.1 to 143.10. Okay. 16, 17, 18. Don't count this time against her. Huh? I can't hear you. Do not count this time against her. Give her a few more minutes. You speak very quickly. I did policy debate in high school, and they teach you how to do something. You did speed and spread, didn't you? Yes. And so everything that sounds normal to me is permanently distorted because of that. The difference is you did that in high school and you did it well, but you're talking to middle-aged ears, and you shouldn't do that. I try to adjust, and it's just my perception of what's a normal rate of speed is just permanent. Both of my kids did speed and spread. Speed and spread. That's the new debating technique for policy debate in high school. It's actually really awful that you not teach students to do it because it completely ruins you as a communicator. They're kids. They don't need to breathe. They just keep going. Yeah. Speed and spread. Yes. Very good. Well, actually it doesn't say anything about time in 143.19, but it says that after a policy has been issued effective for 60 days, our renewal, the insurer shall not exercise its option to cancel such policy except for one or more of the following reasons. Then it says non-payment of premiums. So then that must have been something that the insurer here says that you have to give 30 days except for non-payment of premiums. Correct. And that's 10 days. So it does not say 10 days for non-payment. Correct. And 214, I'm sorry, 143. But it would seem to me that that wouldn't apply until you have non-payment. Right? Why would you give 10 days notice of non-payment if you paid? And that's directly with the Hernandez decision. The case law says that you can, though. And the Hernandez court stated that there were two reasons for that holding. The first was that the plain language of the statute did not actually impose a requirement that that notice had to be made more than or only after the event of non-payment. As long as it's made conditional and shows that it's if they don't pay. Then because the legislature didn't provide for that requirement, the court, as the Hernandez court held, should not impose that requirement. And it illustrated why that was the correct holding. The court explained that otherwise insurers would have to wait until the event of non-payment, a premium payment, was actually missed, and then they could send out their cancellation notice. And then they would get paid for that interim. Exactly. But because they had to provide 10 days notice, the cancellation date could only be 10 days from the date of the mispayment. And so they would be providing 10 days of coverage where they had received no compensation for that coverage. So the Hernandez court concluded that because of that rationale, but mainly relying on the language of the statute, you did not have to wait to send the cancellation alert until there was an event of non-payment. The Hernandez court also emphasized that there was a second requirement that all cancellation alerts in Illinois must meet. And that it be that the actual explanation for why the policy would be canceled would be specific. Now the Cujbida versus Verizon insurance case, also by Illinois appellate court, explained exactly what that specificity requirement required of a notice. And basically what it said, it had to give enough information to the insured that they were able to understand the reason for cancellation so that they could either contest that reason if the reason was invalid, or B, take the necessary steps to prevent cancellation. Here, the cancellation alert explicitly stated that a premium payment was due by March 11th. It also informed the insured that if payment was not received by that date, then this notice would serve as the cancellation notice to the insured. Therefore meaning that the policy would be canceled because they not received payment of a premium. So that alerts the insured to the fact that the cancellation would be due to non-payment of premium. If their records had already demonstrated that they had paid that premium, they could bring that attention to the attention of the founders insurance company. Alternatively, it lets them know that as long as they submit that payment by the end of day March 11th, 2012, the policy would remain in full force in effect. Therefore, the cancellation alert was sufficiently specific under Illinois law, according to the Cujbida court's interpretation of that requirement. Additionally, this court issued the Fuller versus American Standard Insurance Company decision, and it is almost directly on point. In Fuller, a policy had been issued and it was canceled. The insured then sent in a payment, and so it was reinstituted for July 2nd. The payment was sufficient to afford coverage from July 2nd to August 2nd. On July 10th, the company sent a notice of cancellation stating that if we don't receive payment on August 2nd, the policy will be canceled. Indeed, payment was never made by the 2nd, and the policy was canceled. Thus, this court has recognized that a cancellation alert can be sent before the event of nonpayment. Additionally, the Fuller court specifically rejected that a policy should be interpreted against the insured in these types of instances, and that the insured should be held to a strict standard simply because there was forfeiture of the policy due to nonpayment of the premium. And these are the crux of the Burnett and Mitchell decisions that opposing counsel relies on. Not only these decisions were handed down in 1943 and 1971, and this court in Fuller in 2003 rejected those premises. Instead, they did not find that the fact that there was promise of an ability to reinstate the policy to be conciliatory or unequivocal or confusing to the insured. Instead, they found that it was unambiguous and permitted cancellation of the policy. Finally, there is simply no ambiguity. For those reasons, we respectfully request that the judgment will not be disturbed. I have a couple of quick points in case you guys have more questions. The Hernandez opinion still, it was not addressed that the notice was sent after a missed payment. The actual cancellation notice at issue was sent six days after the insured missed the payment. Similarly, in Fuller- The cancellation notice was sent six days after. After the missed payment. Also in Fuller- And by the time he received it, had he made the payment? No. And then in Fuller also, while there were no payments made by August 2nd, there was another cancellation notice sent on August 7th after that missed payment. And in addition to that, I still believe that the notice is ambiguous because it has two different potential meanings. On one hand, it says it was a missed payment and on the other hand, it doesn't. I would just, I would suggest you guys take a good look at the Hernandez and Fuller opinions and just kind of map out the notices and things like that because it does get confusing. But in both instances, those notices of cancellation were sent after a missed payment. I'm still concerned that the American Accounting Association case, while not final yet, it says it's not final. It almost is final. But Justice Tice doesn't make any exception for prejudice or anything like that. I agree, but I don't think he had the same situation in front of him as- I'm so sorry. It's a bad habit, very bad habit. I'm sorry. I don't believe she had the same situation in front of her as is in front of you. She had a postmark case. Right, but there was no certificate of mailing whatsoever. Right, that's true. She says, had they complied with it, we wouldn't have this problem. I agree. Right. And it's not going to be a problem if they run into it again. I can assure you of that. But I don't believe that this is the kind of thing that should prejudice my clients and deprive them of their day in court simply because the wrong person signed the certificate of mailing. Thank you very much. Thank you.